**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DENISE LIGHTFORD,

                    Plaintiff,

vs.                                                    Case No.  3:10-cv-449-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.
_____/

## OPINION AND ORDER[1]

### I.  Status

Denise Lightford ("Plaintiff") is appealing the Commissioner of the Social Security

Administration's final decision denying her claim for disability insurance benefits and

supplemental security income.  Transcript of Administrative Proceedings (Doc. No. 6; "Tr.")

at 69, 79, 110-12.  Her alleged inability to work is based on the following impairments:

"asthma, high blood pressure, congestive heart failure, and depression."  Tr. at 60.  On

August 1, 2007, Plaintiff completed an application for disability benefits, alleging an onset

date of disability of July 27, 2004.  Tr. at 110-12.  On September 10, 2009, an Administrative

Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified.

Tr. at 21-57.  On September 29, 2009, the ALJ issued a Decision finding Plaintiff not

disabled through the date of the Decision.  Tr. at 11-20.  On March 19, 2010, the Appeals

Council denied Plaintiff's request for review.  Tr. at 1-3.  On May 24, 2010, Plaintiff

_____

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See
Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 10), filed September 29,
2010; Order of Reference (Doc. No. 11) entered on September 30, 2010.

commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision. Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff, who was forty-four years old at the time of her hearing before the ALJ, Tr. at 24-25, argues the ALJ "failed to substantially evaluate all of her diagnosed (severe) impairments and their resulting symptoms," Memorandum in Support of Plaintiff's Position (Doc. No. 13; "Pl.'s Mem."), filed October 25, 2010, at 6.  Specifically, Plaintiff asserts the following: (1) the ALJ failed to "adequately consider . . . [Plaintiff]'s cognitive capacity"; (2) the ALJ erred in his credibility determination of Plaintiff; and (3) the ALJ failed to present a comprehensive hypothetical to the VE at the hearing.  Id. at 7, 8, 9.  After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the Commissioner's final decision is due to be affirmed.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the individual: (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  See 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the

---

[2]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ performed the required five-step sequential inquiry.  Tr. at 13-20.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since July 27, 200[4[3]], the alleged onset date."  Tr. at 13 (citation omitted).  At step two, the ALJ found Plaintiff suffers from the following severe impairments: "asthma; hypertension; obesity; history of alcohol and cocaine dependence; adjustment disorder with depressed mood; history of cardiomyopathy with reduced ejection fraction; anemia."  Tr. at 13-14 (citation omitted).  At step three, the ALJ stated Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1."  Tr. at 14 (citation omitted).

The ALJ determined Plaintiff has the following RFC:

> [T]o perform sedentary work . . . except [Plaintiff] can occasionally crawl and climb ramps, stairs, ladders, ropes and scaffolds.  [Plaintiff] should have no exposure to pulmonary irritants such as fumes, odors, dust, gases, and hazards.  [Plaintiff] would be capable of performing tasks and of maintaining a work routine without special supervision.  As [a] result of physical and emotional factors, she may experience occasional episodes of decreased attention/concentration/pace.  Although she may prefer to have limited interaction with others, [Plaintiff]'s interpersonal skills are adequate.

Tr. at 16.  At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work."  Tr. at 19.  At step five, the ALJ found Plaintiff can perform the following jobs, which exist in significant numbers in the national economy: "sedentary assembler," "sedentary packer," and "order clerk."  Tr. at 20.  The ALJ concluded that Plaintiff was not under a disability from the alleged onset date through the date of the Decision.  Tr. at 20.

---

[3]        It appears the ALJ inadvertently noted in the Decision Plaintiff's year of alleged onset of disability as 2007.  Plaintiff's alleged onset date of disability is July 27, 2004.  Tr. at 110.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.  Discussion

The Court must resolve the following: (1) whether the ALJ failed to "adequately consider . . . [Plaintiff]'s cognitive capacity"; (2) whether the ALJ erred in his credibility determination of Plaintiff; and (3) whether the ALJ failed to present a comprehensive hypothetical to the VE at the hearing.  Pl.'s Mem. at 7, 8, 9.

**A.      Plaintiff's Cognitive Capacity**

Plaintiff contends the ALJ failed to "adequately consider . . . [Plaintiff]'s cognitive capacity . . . ." Id. at 7.  Plaintiff asserts that her "history of special education related to a cognitive functionality below that of a regular 12th grade education" contradicts the ALJ's conclusion regarding her cognitive functioning.  Id.  Plaintiff further submits that because Jerry Valente, Ph.D. ("Dr. Valente"), who performed a psychological evaluation of Plaintiff, "did not include an Axis II[] diagnosis in his consultative report," the ALJ failed to fully assess Plaintiff's "cognitive capacity."  Id.

The ALJ determined Plaintiff has a severe impairment of adjustment disorder with depressed mood, Tr. at 13, but concluded that it does not meet or medically equal one of the listed impairments in the Regulations, Tr. at 14.   To support this determination, the ALJ relied, in part, on the opinions of Dr. Valente; Angeles Alvarez-Mullin, M.D. ("Dr. Alvarez-Mullin"), a state agency medical consultant; and Carol Deatrick, Ph.D. ("Dr. Deatrick"), a licensed psychologist.  In formulating Plaintiff's RFC as to her mental limitations, the ALJ assigned controlling weight to the opinion of Dr. Alvarez-Mullin.

**1.  Relevant Evidence Regarding Cognitive Capacity**

On November 19, 2007, Dr. Valente performed a psychological evaluation of Plaintiff.  Dr. Valente noted Plaintiff "presented as alert and oriented[,] . . . showed no evidence of distractibility[,] and tracked conversation reasonably well."  Tr. at 305.  Moreover, Plaintiff's "orientation was intact for person, place, time, and situation[,] . . . [s]he was able to count from one to forty by threes and did fair at serial subtraction[, and] . . . [she] could remember four digits forward and three reversed."  Tr. at 305.  Further, Plaintiff "was able to name the city, state, and the president[,] . . . [her] eye contact was good[,] . . . [her] speech was

coherent[,and] . . . [h]er vocabulary and grammar skills were suggestive of intellectual functioning within the average range." Tr. at 305.  Dr. Valente observed Plaintiff was "open and cooperative[,] . . . [h]er mood was mildly depressed[,] . . . [her] affect was situationally appropriate and showed full range[, and] . . . [h]er judgment and insight were fair." Tr. at 305. With regard to Plaintiff's memory and thought processes, Dr. Valente concluded her "memory functions were grossly intact with respect to immediate and remote recall of events and factual information[,] . . . [she] could recall three out of three items after a five minute period[, and] . . . [h]er thought processes were logical and coherent." Tr. at 305.  Plaintiff denied any "current homicidal, suicidal ideation, ongoing hallucinations, and paranoia." Tr. at 305.  Dr. Valente stated that there was "[n]o high risk behavior reported."  Tr. at 305.

As to Plaintiff's contention that Dr. Valente failed to "include an Axis II[] diagnosis in his consultative report," see Pl.'s Mem. at 7, the undersigned finds this argument without merit.  The Diagnostic and Statistical Manual of Mental Disorders ("DSM") contains a multiaxial system organized into five axes related to different facets of disorder or disability.[4] Dr. Valente concluded in his consultative evaluation with respect to the multiaxial analysis as follows: Axis I – "304.20 Cocaine Dependence (Crack Cocaine) . . . 309.80 Adjustment Disorder with Depressed Mood"; Axis II – "V71.09 No Diagnosis"; Axis III "Asthma, Hypertension"; Axis IV – "Unemployment, Financial Duress"; Axis V – "GAF = 60." Tr. at 305. Contrary to Plaintiff's contention, Dr. Valente did not neglect to complete an Axis II analysis; rather, he determined Plaintiff does not have a personality disorder or suffer from mental

---

[4]         The five axes are as follows:
Axis I – Clinical disorders; other conditions that may be a focus of clinical attention
Axis II – Personality disorders; mental retardation
Axis III – General medical conditions
Axis IV – Psychosocial and environmental problems
Axis V – Global Assessment of Functioning
Diagnostic and Statistical Manual of Mental Disorders, at 27 (4th ed.).

retardation.  Dr. Valente's diagnosis is consistent with his observations in the consultative evaluation.  See Tr. at 304-06.

Dr. Deatrick completed a psychiatric review technique form ("PRTF") on December 6, 2007.  Tr. at 308-21.  Dr. Deatrick determined Plaintiff's impairments are not severe.  Tr. at 308.  She concluded Plaintiff has an adjustment disorder, Tr. at 311, as well as a substance addiction disorder, Tr. at 316.  Dr. Deatrick did not find evidence of a mental disorder, a psychotic disorder, mental retardation, an anxiety-related disorder, a somatoform disorder, a personality disorder, or a developmental disorder.  Tr. at 309, 310, 312, 313, 314, 315, 317.  Dr. Deatrick concluded Plaintiff has no restrictions of activities of daily living, has mild difficulties in maintaining social functioning, has mild difficulties in maintaining concentration, persistence, or pace, and has had no episodes of decompensation, each of extended duration.  Tr. at 318.  Dr. Deatrick further concluded the evidence does not establish the presence of "paragraph C" criteria.  Tr. at 319.  Dr. Deatrick noted Plaintiff's history of illegal drug use, her Global Assessment of Functioning ("GAF") score of sixty, her "normal" mental status examination results, and her ability to perform activities of daily living.  Tr. at 320.  Dr. Deatrick concluded that "[o]verall, the objective data does not support signif[icant] limits due to mental condition."  Tr. at 320 (capitalization omitted).

The record also contains reports by Plaintiff on February 18, 2008 of episodes of depression and paranoia to the licensed mental health counselor at the Mental Health Resource Center, see Tr. at 334, and episodes of depression on January 28, 2008 and March 10, 2008 to Duval County Health Department, see Tr. at 331-32, 327-29.

In Dr. Alvarez-Mullin's PRTF, dated April 18, 2008, she concluded Plaintiff has an adjustment disorder with depressed mood, Tr. at 258, 261, as well as a substance addiction

disorder of cocaine dependence, Tr. at 266. Dr. Alvarez-Mullin did not find evidence of a mental disorder, a psychotic disorder, mental retardation, an anxiety-related disorder, a somatoform disorder, a personality disorder, or a developmental disorder. Tr. at 259, 260, 262, 263, 264, 265, 267. Dr. Alvarez-Mullin concluded Plaintiff has mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. Tr. at 268. Dr. Alvarez-Mullin further concluded the evidence does not establish the presence of "paragraph C" criteria. Tr. at 269. In reaching the conclusions in the PRTF, Dr. Alvarez-Mullin specifically referenced in her detailed notes Dr. Valente's findings in his Psychological Evaluation on November 19, 2007; findings from St. Vincent's Family Medicine Center in August 2007; findings from Plaintiff's Comprehensive Psychosocial Assessment prepared by a licensed mental health counselor on February 18, 2008 at the Mental Health Resource Center; findings from the Duval County Health Department regarding Plaintiff's depression; and Plaintiff's activities of daily living. Tr. at 270.

In Dr. Alvarez-Mullin's mental RFC assessment, she determined Plaintiff is moderately limited in the ability to understand and remember detailed instructions; in the ability to carry out detailed instructions; in the ability to maintain attention and concentration for extended periods; in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and in the ability to set realistic goals or make plans independently of others. Tr. at 390-91. In all other areas, Dr. Alvarez-Mullin determined Plaintiff is not significantly limited or there is no evidence of a limitation. Tr. at

390-91. After making the above summary findings, Dr. Alvarez-Mullin made detailed findings

regarding Plaintiff's mental RFC:

> [Plaintiff] would be capable of performing tasks and of maintaining a work routine without special supervision. As a result of physical and emotional factors, she may experience occas[ional] episodes of decreased attention/concentration/pace. Although she may prefer to have limited interaction with others, [Plaintiff]'s interpersonal skills are adequate.

Tr. at 392.

## 2. Applicable Law/Analysis

In evaluating a claimant's mental condition, the Regulations direct the use of the

psychiatric review technique. <u>See</u> 20 C.F.R. §§ 404.1520a, 416.920a. The psychiatric

review technique is embodied in the PRTF and is further described in the preface to section

12.00 of the listing of impairments. <u>See</u> 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.

In the first step of the psychiatric review technique, it is determined whether a claimant has

a medically determinable mental impairment using the criteria in "paragraph A" of the listings.

20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); 20 C.F.R. Part 404, Subpart P, Appendix 1

§ 12.00. Next, the degree of functional limitation relating to such impairment is ascertained.

20 C.F.R. §§ 404.1520a(c), 416.920a(c). In determining the degree of functional limitation

resulting from a mental impairment, four "broad functional areas" in "paragraph B" of the

listings are rated: activities of daily living; social functioning; concentration, persistence, or

pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); 20

C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. The first three broad functional areas are

rated using a five-point scale: none, mild, moderate, marked, and severe. 20 C.F.R.

§§ 404.1520a(c)(4), 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. If

the criteria under paragraph B do not establish that the claimant is disabled, depending on

the type of mental disorder, the criteria under "paragraph C" are considered.  20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.

Next, if "paragraph C" does not establish that the claimant is disabled, the severity of the mental impairment is determined based on the degree of limitations in the four broad functional areas.  See 20 C.F.R. §§ 404.1520a(d), 416.920a(d); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.  If the claimant is determined to have a severe mental impairment that does not meet or medically equal any of the impairments listed, then the claimant's RFC is assessed.  20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.  The ratings of the claimant's limitations in the four broad functional areas pursuant to the psychiatric review technique "are not an RFC assessment but are used to rate the severity of mental impairments at steps [two] and [three] of the sequential evaluation process."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4.  "The mental RFC assessment used at steps [four] and [five] of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the [listings]."  Id.

When making the more detailed assessment and itemizing the claimant's various functions in assessing the RFC at steps four and five of the sequential evaluation process, "[n]onexertional capacity[5] must be expressed in terms of work-related functions."  Id. at *6. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations;

---

5       "Nonexertional capacity measures all work-related limitations and restrictions that do not depend on an individual's physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions."  SSR 96-8p, 1996 WL 374184, at *6.

and deal with changes in a routine work setting." Id.; see also 20 C.F.R. §§ 404.1545(c),

416.945(c); Pabon v. Barnhart, 273 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003).   The

assessment of functional limitations resulting from mental impairments "is a complex and

highly individualized process that requires [consideration of] multiple issues and all relevant

evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional

limitation."  20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1).

Here, the ALJ first evaluated the "paragraph A" and "paragraph B" criteria in part as

follows:

> Dr. Valente completed a mental status evaluation and history of [Plaintiff], which
> revealed an adjustment disorder and a long history of alcohol and crack cocaine
> dependence.  Dr. Valente observed that [Plaintiff] denied present use of crack
> cocaine, was working part-time at a local Pizza Hut for the prior two years. He
> noted she was pleasant and alert, had a clear sensorium and he noted that he
> observed no evidence of a psychotic process or disorder of thought to
> [Plaintiff]'s personality.  While [Plaintiff]'s attorney alleges that [Plaintiff] meets
> items, 2, 3, 4, and 6 [] of the paragraph A criteria for listing 12.08[6], Carol
> Deatrick, Ph.D., a state disability expert did not find [Plaintiff]'s symptoms and
> records to even be severe enough to rate [Plaintiff] under 12.08, and has
> instead opined that [Plaintiff] has a non-severe adjustment disorder and a non-
> severe substance abuse problem.  Dr. Deatrick opined that the objective data
> does not support significant limits due to a mental condition.
>
> Dr. Valente opined that [Plaintiff] had a code of 60 on the Global
> Assessment of Functioning Scale, which indicates moderate symptoms, such
> as a flat affect, circumstantial speech and occasional panic attacks or moderate
> difficulty in social, occupational or school functioning such as few friends and
> conflicts with peers or co-workers.

---

[6]    Listing 12.08 is entitled "Personality Disorders."  20 C.F.R. Part 404, Subpart P, Appendix 1,
§ 12.08.  The paragraph A criteria are as follows:

A.  Deeply ingrained, maladaptive patterns of behavior associated with one of the following:
1.  Seclusiveness or autistic thinking; or
2.  Pathologically inappropriate suspiciousness or hostility; or
3.  Oddities of thought, perception, speech and behavior; or
4.  Persistent disturbances of mood or affect; or
5.  Pathological dependence, passivity, or aggressivity; or
6.  Intense and unstable interpersonal relationships and impulsive and damaging behavior[.]

In activities of daily living, [Plaintiff] has moderate restriction. [Plaintiff] testified that she is more limited by her physical limitations than mental limitations. She said that she is able to shop for groceries, but must take the bus to get there. She reports hearing voices, but is able to maintain contact with reality and not respond to them. [Plaintiff] reportedly does pick at herself but is able to do it in unobtrusive places where it can be covered with a wig, or socks. Dr. Deatrick opined that [Plaintiff] is capable of performing her activities of daily living.[7]

In social functioning, [Plaintiff] has mild difficulties. [Plaintiff] testified that she has problems dealing with other people and gets claustrophobic. [Plaintiff] reported going off on rehabilitation workers when asked to move her vehicle when she was non-compliant with her prescribed medication. [Plaintiff] has reported some panic attacks. However, the undersigned notes that [Plaintiff] managed to keep a part-time job at Pizza Hut which conflict[s] with the severity of her alleged social functioning difficulties. Dr. Valente noted that [Plaintiff] was able to cooperate and show appropriate social interaction.

With regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties. While [Plaintiff] has reported some distractions by voices, she is able to respond appropriately to them, and recognizes that she cannot follow their directions.    [Plaintiff] will have periods during which her concentration will decrease; however, she is still able to function effectively. [Plaintiff] may have some distraction by emotional issues, but remains capable of responding effectively.

As for episodes of decompensation, [Plaintiff] has experienced no episodes of decompensation, which have been of extended duration. Records reveal that [Plaintiff] has suffered some marital difficulties which may contribute to temporary exacerbations of symptoms.

Tr. at 14-15 (citations omitted).   The ALJ concluded that because Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied." Tr. at 15. The ALJ further considered whether the "paragraph C" criteria were satisfied, and he concluded that "the evidence fails to establish the presence of the 'paragraph C' criteria." Tr. at 15 (citing Tr. at 258-71, 308-21).

---

[7]    For a discussion and analysis of the ALJ's findings regarding Plaintiff's daily activities, see infra at p. 22.

-12-

In assessing the mental RFC in his Decision, the ALJ properly performed the required translation of Plaintiff's limitations resulting from her mental impairments from the four broad functional areas to a work-related function: Plaintiff "would be capable of performing tasks and of maintaining a work routine without special supervision. As a result of physical and emotional factors, she may experience occasional episodes of decreased attention/concentration/pace. Although she may prefer to have limited interaction with others, [Plaintiff]'s interpersonal skills are adequate." Tr. at 16. In formulating Plaintiff's RFC as it relates to her mental impairments, the ALJ assigned "controlling weight" to Dr. Alvarez-Mullin. Tr. at 18. In fact, the ALJ incorporated Dr. Alvarez-Mullin's detailed mental RFC conclusions nearly verbatim. Compare Tr. at 16, with Tr. at 392.

Substantial evidence supports the ALJ's reliance on the opinion of Dr. Alvarez-Mullin regarding Plaintiff's cognitive functioning, as it is consistent with and bolstered by the opinions of Dr. Valente, Dr. Deatrick, medical records from the Mental Health Resource Center and Duval County Health Department, and Plaintiff's activities of daily living.[8] The ALJ adequately considered Plaintiff's mental capacity, and the ALJ's conclusions with regard to Plaintiff's alleged deficits in cognitive functioning are supported by substantial evidence. Thus, the ALJ did not err in this regard.

---

[8] The undersigned recognizes that generally, the opinions of nonexamining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer ex rel. Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a nonexamining physician's opinion that is consistent with and bolstered by the evidence. See Oldham v. Schweiker, 660 F.2d 1078, 1084, 1084 n.7 (11th Cir. Unit B 1982) (citing Johnson v. Harris, 612 F.2d 993, 998 (5th Cir. 1980) (recognizing the opinion of reviewing physicians who never examined the claimant, taken alone, did not constitute substantial evidence but remanding to determine, inter alia, whether the physicians "had other adequate acceptable information before making their reports")).

### B.    Plaintiff's Credibility

Plaintiff challenges the ALJ's finding that she is "not credible."  Pl.'s Mem. at 7-8.

Plaintiff claims that her testimony is credible and consistent with the evidence.  Id. at 8.

Defendant asserts to the contrary that the ALJ properly considered the objective medical

evidence, Plaintiff's inconsistent statements, her activities of daily living, and her symptoms

in finding her "not credible."  Memorandum in Support of the Commissioner's Decision (Doc.

No. 14; "Def.'s Mem."), filed December 27, 2010, at 10-13.

To establish a disability based on testimony of pain or other subjective symptoms, a

claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying

medical condition; and (2) either (a) objective medical evidence confirming the severity of the

alleged subjective symptoms; or (b) that the objectively determined medical condition can

reasonably be expected to give rise to the claimed subjective symptoms.  Wilson v. Barnhart,

284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir.

1991) (stating that "the standard also applies to complaints of subjective conditions other than

pain")).  "The claimant's subjective testimony supported by medical evidence that satisfies

the standard is itself sufficient to support a finding of disability."  Holt, 921 F.2d at 1223.

"[C]redibility determinations are the province of the ALJ."  Moore v. Barnhart, 405 F.3d

1208, 1212 (11th Cir. 2005).  The ALJ "must articulate explicit and adequate reasons" for

finding a claimant "not credible."  Wilson, 284 F.3d at 1225.  "When evaluating a claimant's

subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities;

(2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other

symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications[;]

and (5) treatment or measures taken by the claimant for relief of symptoms."  Davis v. Astrue,

287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).  After considering the claimant's subjective complaints, "the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence."  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

"In determining the credibility of the individual's statements, the [ALJ] must consider the entire case record, including the objective medical evidence, . . . statements and other information provided by treating or examining physicians . . . about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. Jul. 2, 1996).  "An individual's statements about the intensity and persistence of pain or other symptoms . . . may not be disregarded solely because they are not substantiated by the objective medical evidence."  Id. (emphasis added).

Here, Plaintiff satisfies the first part of the test applied in Wilson v. Barnhart, 284 F.3d at 1225, because the ALJ found evidence of an underlying medical condition.  See Tr. at 13-14.  Specifically, the ALJ found evidence of "asthma; hypertension; obesity; history of alcohol and cocaine dependence; adjustment disorder with depressed mood; history of cardiomyopathy with reduced ejection fraction; anemia . . . ." Tr. at 13-14.  As to the second part of the Wilson test, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [Plaintiff's RFC] assessment." Tr. at 17.  As discussed below, a review of the record reveals the ALJ articulated explicit and adequate reasons for finding Plaintiff "not credible" after considering factors discussed in Davis and set forth in the Regulations.  See Davis, 287 F. App'x at 760; 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Moreover, the ALJ's reasons for finding Plaintiff "not credible" are supported by substantial evidence. See Marbury, 957 F.2d at 839.

### 1.    Plaintiff's Inconsistent Representations

The ALJ determined Plaintiff made inconsistent representations or withheld information in reporting to doctors and/or testifying at the hearing. Tr. at 17-19. Specifically, the ALJ concluded that Plaintiff's representations as to her illegal drug, alcohol, and tobacco use; her alleged illiteracy; and her criminal history detract from her credibility. Tr. at 17-18, 19.

The ALJ noted Plaintiff made a decision when she was released from St. Vincent's Medical Center in July 2007 to stop drinking, smoking, and illegal drug use. See Tr. at 17. The record reflects Plaintiff indeed made such representation upon discharge from St. Vincent's Medical Center.  Tr. at 403 (Helen C. Hobbs, M.D. ("Dr. Hobbs") and Sonya Dominguez, M.D., both physicians from St. Vincent's Family Medicine Center, reporting that "[Plaintiff] states she made a decision and no longer smokes, drinks alcohol or does any drugs.  She is determined to stay that way").  The ALJ specifically pointed to Plaintiff's Comprehensive Psychosocial Assessment on February 18, 2008 in which "it was incidentally noted that [Plaintiff] continued to drink in conjunction with marital difficulties . . . [and s]he reported [drinking] one glass [of alcohol] in December of 2007, got drunk two years prior and had not used other drugs for about eleven years . . . ." Tr. at 18. The ALJ recognized such a report was "inconsistent with other reports, her hearing testimony, and the record as a whole." Tr. at 18 (citation omitted).

Substantial evidence supports the ALJ's conclusions with regard to Plaintiff's illegal drug, alcohol, and tobacco use. See Tr. at 40 (Plaintiff testifying at the hearing on September

10, 2009 that she stopped smoking three years prior to the hearing; she drank "a glass of wine here and there" three years prior to the hearing; and initially stating she did not have a history of drug use, then stating she could not remember the last time she used drugs); 304 (Dr. Valente indicating on November 19, 2007 that one of Plaintiff's grounds for disability was "crack cocaine dependence"); 305 (Dr. Valente stating on November 19, 2007 Plaintiff "smokes approximately two cigarettes per week and drinks six to seven beers per week"); 352 (Plaintiff representing to the Duval County Health Department on January 28, 2008 that she smokes and drinks once or twice a week and that she never used illegal drugs); 363 (Timothy J. McCormick, D.O., M.P.H. ("Dr. McCormick") reporting on May 21, 2008 that Plaintiff smokes one pack of cigarettes every two weeks and drinks on holidays); 406 (Plaintiff reporting on February 18, 2008 she was separated from her husband and "still drinks at times"); 409 (Plaintiff reporting on February 18, 2008 drinking a glass of wine in December 2007 and being drunk about once a week, two years prior to the date of the report); 409 (Plaintiff reporting on February 18, 2008 she had not use "crack, cocaine, [or] cannabis" in eleven years); 442 (Leith Abdulla, M.D., one of Plaintiff's cardiologists, reporting on September 12, 2008 that Plaintiff admits to "tobacco smoking" and once or twice a week alcohol use); 452 (Plaintiff representing to Prithvi Rai, M.D. ("Dr. Rai") on October 7, 2008 that Plaintiff was an ex-smoker and denied "any alcohol abuse or drug abuse").

As to illiteracy, the ALJ noted Plaintiff "reported completing a GED, yet claims to be illiterate."  Tr. at 19.  The ALJ's determinations regarding Plaintiff's ability to read are supported by substantial evidence.  At the hearing, Plaintiff testified she "went up to" the twelfth grade and received a special education diploma.  Tr. at 25.  She further testified she can read and write "[a] little" but claimed to be illiterate.  Tr. at 25.  On February 18, 2008,

Plaintiff represented to the Mental Health Resource Center that she had completed her GED "as far as [she] knows." Tr. at 334, 339. Moreover, on November 19, 2007, Dr. Valente noted Plaintiff "was able to count from one to forty by threes and did fair at serial subtraction[,] . . . [she] could remember four digits forward and three reversed[,] . . . [she] was able to name the city, state, and the president[,] . . .[and h]er vocabulary and grammar skills were suggestive of intellectual functioning within the average range." Tr. at 305. With regard to Plaintiff's memory and thought processes, Dr. Valente concluded her "memory functions were grossly intact with respect to immediate and remote recall of events and factual information[,] . . . [she] could recall three out of three items after a five minute period[, and] . . . [h]er thought processes were logical and coherent." Tr. at 305. Plaintiff also indicated to the Social Security Administration that she can read and understand English and she can write more than her name in English. Tr. at 172.

The ALJ relied on Plaintiff's failure to report a recent "history of legal troubles" as further support for finding Plaintiff incredible. Tr. at 18. Although Plaintiff's self-reported criminal history is not abundantly clear, and there may be slight inconsistencies in her reports to various physicians, the deficiencies in Plaintiff's reports of her criminal history do not alone amount to substantial evidence that she is "not credible." Notwithstanding this finding, the other reasons articulated by the ALJ are adequate and are supported by substantial evidence.

### 2.     Plaintiff's Symptoms and Treatment Measures

Regarding Plaintiff's physical symptoms and treatment measures, the ALJ discussed and relied on a number of evaluations (which included Plaintiff's self-reported symptoms) in concluding that the symptoms and treatment measures detract from her credibility.

First, the ALJ relied in part on the evaluation by Dr. McCormick performed on May 21,

2008.  The ALJ stated the following:

> [Plaintiff's] hypertension was well controlled by medication.  [Dr. McCormick]
> noted that [Plaintiff]'s cardiac problems did not appear to be anginal in nature
> noting that the records reveal normal coronary arteries. He opined that [Plaintiff]
> appeared to be functioning at the sedentary activity level as she described it.
> While some range of motion limitations were noted, they did not appear to be
> related to a joint problem. . . . When laying supine on the examination table,
> [Plaintiff] quickly became short of breath and indicated she has problems in
> such postures.  [Plaintiff] reported using an inhaler twice a day for asthma, but
> she did not use a nebulizer. [Plaintiff] reported treatment for congestive heart
> failure.

Tr. at 17 (citation omitted).  The ALJ's summary of Dr. McCormick's report is accurate.  See

Tr. at 362-65.  A review of Dr. McCormick's report also indicates Plaintiff "has no history of

hypertensive complications," Tr. at 363, and Plaintiff reported she felt the medications for her

congestive heart failure "have been helpful," Tr. at 362.

The ALJ also relied in part on Dr. Rai's report of Plaintiff's physical symptoms as

follows:

> On October 1, 2008, a transthoraic echocardiogram revealed that
> [Plaintiff] had normal left ventricular ejection fraction, mild mitral valve
> regurgitation and normal left wall thickness with a borderline dilatation of the left
> ventricle.  [Plaintiff] reported that on some days she could walk miles while on
> others she could not make it to the door.  A Holter evaluation from September
> 2008 essentially showed normal sinus rhythm, short runs of [supraventricular
> tachycardia], occasional [premature ventricular contractions] and [premature
> atrial complexes] without any significant arrhythmias noted. It was noted overall
> [Plaintiff] had a history of hypertension, nonischemic cardiomyopathy, mitral
> regurgitation and pulmonary hypertension with left ventricular function and mitral
> valve regurgitation that had "significantly improved" since the 2007 episode.  No
> significant signs of the previously noted pulmonary hypertension were present.
> Essentially, [Plaintiff]'s cardiac testing results had been within normal limits and
> no further testing was recommended by [Dr.] Rai[].

Tr. at 18.  The ALJ's description of Plaintiff's impairments are consistent with Dr. Rai's notes.

See Tr. at 450-53.

The ALJ also noted that "state disability experts" determined Plaintiff is capable of performing "light exertional activity[.]"  Tr. at 18; see also Tr. at 382-89 (Physical RFC Assessment by Janet Attlesey, M.D. ("Dr. Attlesey")), Tr. at 394-401 (Physical RFC assessment by Jennifer Ellis).  The ALJ emphasized that in view of Plaintiff's claims of "shortness of breath," he found Plaintiff more limited than did the state disability experts who concluded Plaintiff was capable of performing light exertional activity.  Tr. at 18.

The ALJ specifically addressed the opinion of Dr. Hobbs, who concluded on July 27, 2007 that Plaintiff could not lift more than ten pounds and could not stand for longer than thirty minutes.  Tr. at 17.  The ALJ granted "little weight" to Dr. Hobbs's July 27, 2007 opinion because "it was meant to impose short term limitations to allow [Plaintiff] to recover from her hospital stay and then return to productive work activity,"  Tr. at 18, and is inconsistent with the other evidence of record, Tr. at 17.  Dr. Hobbs wrote her opinion on July 27, 2007 on a doctor's prescription pad from her office to Plaintiff's employer in conjunction with Plaintiff's release from St. Vincent's Medical Center.  See Tr. at 420.  The limitations in the note are inconsistent with other evidence in the record.  See, e.g.,Tr. at 382-89, 394-401, 450.

As to Plaintiff's mental symptoms and treatment measures, the ALJ concluded that Plaintiff "does have a history of mental health treatment which shows that when she is compliant [with her medications], her symptoms are quite manageable."  Tr. at 19.  The ALJ observed that in February 2008, Plaintiff's "mental status was noted to have appropriate appearance, anxious/depressed affect/mood, appropriate behavior and normal speech."  Tr. at 18 (referring to Tr. at 407 (Comprehensive Psychosocial Assessment)).  The February 2008 Comprehensive Psychosocial Assessment to which the ALJ was referring indicates Plaintiff would benefit from medication and a psychological evaluation, and that Plaintiff would

soon begin counseling. Tr. at 406, 415. The ALJ also relied on the mental RFC assessment of Dr. Alvarez-Mullin. Tr. at 18. Dr. Alvarez-Mullin noted Plaintiff had just started medication for depression, and she "[c]ould benefit from other mental health services to address her various stressors." Tr. at 392.

Dr. Valente reported Plaintiff was "open and cooperative"; her mood was "mildly depressed"; and her affect was "situationally appropriate and showed full range." Tr. at 305. Contrary to Plaintiff's claim of problems with memory and confusion, see Pl.'s Mem. at 8, Dr. Valente determined her memory functions were "grossly intact"; her thought processes were "logical and coherent"; and her "judgment and insight were fair." Tr. at 305. Dr. Valente noted Plaintiff denied "current homicidal, suicidal ideation, ongoing hallucinations, and paranoia." Tr. at 305.

The record further reflects Plaintiff indicated at the hearing that she receives counseling from mental health professionals and receives medication. Tr. at 35. She testified that she is "fine" when she is taking her medication. Tr. at 35.

Plaintiff asserts her symptoms of headaches, poor sleep, and self mutilation are "significant." Pl.'s Mem. at 8. The ALJ considered these symptoms. The ALJ stated that Plaintiff's headaches occur "twice a week." Tr. at 17. The ALJ noted Plaintiff "gouges her skin," Tr. at 17, but he observed that she is "able to do it in unobtrusive places where it can be covered with a wig, or socks," Tr. at 15. The ALJ recognized Plaintiff's "medications cause her sleepiness" and that she needs to "rest after exertion." Tr. at 17. A sleep study conducted of Plaintiff shows that her "[p]oor sleep efficiency may be due to leg cramping or possibly poor sleep hygiene" and that she has "mild sleep apnea." Tr. at 375.

In sum, the ALJ adequately considered Plaintiff's symptoms and treatment measures in assessing Plaintiff's credibility as to her alleged pain.

### 3.    Activities of Daily Living

In the Decision, the ALJ indicated that Plaintiff's claimed impairments are not supported by Plaintiff's reported activities of daily living. See Tr. at 17.  Plaintiff continued to work despite her alleged limitations. See Tr. at 363 (Plaintiff working part-time at Pizza Hut as of May 21, 2008); 417 (Plaintiff working for Fletcher's Tendercare on March 31, 2009). Also, Plaintiff can cook and prepare meals, clean her house, do the laundry, leave the house, and shop. See Tr. at 38-39 (Plaintiff stating she can wash some dishes and take out a small bag of trash); 49 (Plaintiff stating she takes the bus or has a friend drive her to shop for food); 159 (Plaintiff stating she takes two hours to clean her house; more than two hours to do the laundry; and three hours to shop); 206 (Plaintiff stating she prepares two to three meals a week, and she cleans her apartment and picks up things in the yard); 207 (Plaintiff stating she goes outside everyday and walks and drives a car; she shops in stores for food and clothes; and she works part-time); 208 (Plaintiff stating on November 11, 2007 that she goes to church and plays sports).  Moreover, Plaintiff reported to Dr. Rai on October 7, 2008 that "some days she is able to walk miles," although she stated some days she cannot walk "from her chair to the door."  Tr. at 450.  The ALJ correctly concluded that Plaintiff's activities of daily living do not support her claimed impairments.

### 4.    Conclusion Regarding Discounting of Testimony

In sum, the ALJ articulated a number of reasons for discrediting Plaintiff's testimony. These reasons, taken together, are explicit and adequate reasons on which to base a finding

that Plaintiff's testimony was "not credible."  Further, upon a thorough review of the entire record, the undersigned finds that the ALJ's reasons are supported by substantial evidence.

### C.      Hypothetical to the VE

Plaintiff contends the ALJ should have formulated a hypothetical to the VE that "comprehensively accounted for all of her impairments and symptoms while describing her resulting functional status."  Pl.'s Mem. at 9 (citation omitted).  Defendant asserts that "the ALJ was not required to include in his hypothetical question Plaintiff's unsupported allegations or accept the VE's testimony in response to hypothetical questions that included Plaintiff's unsupported allegations."  Def.'s Mem. at 14.  As discussed above, the ALJ's findings with regard to Plaintiff's cognitive/mental functioning are supported by substantial evidence.  Therefore, the undersigned now focuses on the findings with regard to alleged physical restrictions.

### 1. Relevant Evidence Regarding Physical Restrictions

Examining physician Dr. McCormick observed on May 21, 2008 that Plaintiff appeared "in good general health."  Tr. at 363.  He found Plaintiff's gait "normal" and noted she did not use an assistive device.  Tr. at 364.  With respect to Plaintiff's hands, he noted "no callouses or atrophy," no deficits in grip strength, and "normal dexterity."  Tr. at 364.  As to her upper extremities, Dr. McCormick found she had full range of motion, no tenderness or swelling, and full strength.  Tr. at 364.  Regarding her lower extremities, he noted "limitations in the hips and knees . . . [that] did not appear to reflect an intrinsic joint problem," no tenderness or swelling, and full strength.  Tr. at 364.  With respect to her spine, Dr. McCormick found "tenderness in the low thoracic area bilaterally" but full range of motion in the cervical area and full range of motion in the thoraco-lumber/trunk area.  Tr. at 364.  He stated there were

"no radicular pain complaints" in seated and supine straight leg raising. Tr. at 364. As to her respiratory system, Dr. McCormick found that Plaintiff's "[b]reath sounds are clear in all fields without rales or wheezes. No use of accessory muscles. No dyspnea noted with activities in the office." Tr. at 365. Regarding Plaintiff's cardiovascular system, he determined her heart had a "regular rate and rhythm without murmurs or gallops." Tr. at 365. There were "[n]o exam findings of peripheral arterial or venous disease" and "[n]o jugular venous distention, edema, or organomegaly." Tr. at 365. Dr. McCormick concluded that "[b]ased on information in her health history, she is probably functioning in a sedentary activity level" and noted "[h]er chest pain symptoms do not sound to be anginal in nature and the medical records describe normal coronary arteries." Tr. at 365.

Plaintiff's cardiologist, Dr. Rai, noted on October 7, 2008 that Plaintiff was "awake, alert and oriented x 3[;] . . . no jugular venous distention, carotid bruits, or neck masses[;] . . . [c]lear to auscultation bilaterally without any adventitious sounds[;] . . . S1 and S2 with regular rate and rhythm[;] . . . [s]he had a soft systolic murmur in the left sternal border[;] . . . [t]he PMI is not displaced nor did [he] appreciate any parasternal heaves or thrills[;] . . . mild truncal obesity[;] . . . [n]o tenderness[;] . . . [n]o organomegaly[; and] . . . [g]ood peripheral pulses without any edema. Tr. at 452. Dr. Rai concluded that "[f]rom a cardiovascular standpoint of view, [he] would not recommend any further testing . . . ." Tr. at 453.

On July 18, 2008, Dr. Attlesey prepared a physical RFC assessment. Tr. at 382-89. Dr. Attlesey concluded Plaintiff can occasionally lift and/or carry twenty pounds; can frequently lift and/or carry ten pounds; can stand and/or walk with normal breaks for at least two hours in an eight-hour workday; can sit with normal breaks a total of about six hours in

an eight-hour workday; and has an unlimited ability to push and/or pull.  Tr. at 383.  As to

postural limitations, Dr. Attlesey determined Plaintiff can occasionally crawl and climb ramps,

stairs, ladders, ropes, and scaffolds.  Tr. at 384.  Plaintiff can frequently balance, stoop,

kneel, and crawl.  Tr. at 384.  With respect to environmental limitations, Dr. Attlesey

concluded Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor

ventilation, and hazards.  Tr. at 386.

### 2.  Applicable Law/Analysis

"In order for a VE's testimony to constitute substantial evidence, the ALJ must pose

a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel,

190 F.3d 1224, 1229 (11th Cir. 1999).  The hypothetical to the VE is typically based in part

on the ALJ's RFC determination.  In determining a claimant's RFC, the ALJ "must consider

limitations and restrictions imposed by all of an individual's impairments, even those that are

not 'severe.'"  SSR 96-8P, 1996 WL 374184 at *5; see also 20 C.F.R. § 404.1545(a)(2);

Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating "the ALJ must consider a

claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734

F.2d 519, 525 (11th Cir. 1984)); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985)

(stating that "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie

even though none of the impairments, considered individually, is disabling") (internal

quotation and citation omitted).  Nevertheless, an ALJ is not required to include findings in

the hypothetical that are properly rejected as unsupported by the evidence.  Crawford, 363

F.3d at 1161.

The ALJ propounded two hypothetical questions to the VE; the first as follows:

[A]ssume that . . . [Plaintiff] is limited to sedentary exertion activity, except that she cannot perform more than occasional climbing or crawling, and she cannot have any exposure to pulmonary irritants or hazards.  Assume further that she is capable of performing tasks and maintaining a work routine without special supervision; that she may experience occasional episodes of decreased attention, concentration, and pace; that she has adequate interpersonal skills.

Tr. at 53-54.  The VE concluded that Plaintiff can perform the jobs of "sedentary assembl[er]," "[s]edentary packer," and "order clerk."  Tr. at 54.

For the second hypothetical, the ALJ asked the VE to assume Plaintiff "is fully credible regarding her allegations and stated functional limitations, and that she is incapable of performing any work at any exertional level due to these limitations on a consistent basis for eight hours a day or [forty] hours a week."  Tr. at 54.  The VE stated that based on this hypothetical Plaintiff "would be unemployable."  Tr. at 55.

Upon review, substantial evidence supports the limitations included in the first hypothetical posed to the VE by the ALJ.  The ALJ adequately captured Plaintiff's mental and physical deficits in the first hypothetical to the VE.  Because the ALJ found Plaintiff "not credible," the second hypothetical to the VE is inapplicable.  Moreover, the ALJ was not required to include limitations in the hypothetical that are not supported by the evidence.  See Crawford, 363 F.3d at 1161.

## V.  Conclusion

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the ALJ's Decision is supported by substantial evidence of record.  In accordance with the foregoing, it is

**ORDERED:**

-26-

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of

42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final

decision.

2.      The Clerk of Court is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 27, 2011.

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

wlg
Copies to:
Counsel of Record